UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: 2:23-cv-01738-APG-BNW |
| CASH CLOUD, INC., d/b/a COIN CLOUD, | Bankruptcy Case No. 23-10423-MKN |
| Debtor. | Chapter 11 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CASH CLOUD, INC., d/b/a COIN CLOUD | Adversary No.: 23-01125 |
| Plaintiff | **Order (1) Granting Defendant's Motion to File Excess Pages, (2) Denying Defendant's Motion for Sanctions, (3) Denying Defendant's Motion to Strike Plaintiff's Motion for Sanctions, and (4) Denying Plaintiff's Motion for Sanctions** |
| v. | |
| CHRISTOPHER MCALARY, | [ECF Nos. 19, 30, 44, 47] |
| Defendant and Third-Party Plaintiff | |
| v. | |
| AMONDO REDMOND, | |
| Third-Party Defendant | |

The Official Committee of Unsecured Creditors of Cash Cloud (UCC) brings this derivative adversary suit on behalf of debtor Cash Cloud, Inc. (d/b/a Coin Cloud) against Christopher McAlary, its former owner, officer, and director. In Count I of its adversary complaint, the UCC alleges that McAlary breached his fiduciary duties to Cash Cloud due to various transactions and decisions that he made both before and after Cash Cloud filed for bankruptcy.

McAlary moves for sanctions against the UCC under Federal Rule of Bankruptcy Procedure 9011.[1] ECF No. 19. He argues that the UCC's pursuit of Count I is frivolous and for an improper purpose. In response, the UCC moves for sanctions against McAlary, arguing that his motion for sanctions is frivolous and for an improper purpose. ECF No. 30. McAlary moves to strike the UCC's motion for sanctions. ECF No. 44. For the reasons below, I deny all of these motions. But I deny McAlary's motion for sanctions without prejudice.

I.  **MCALARY'S MOTION FOR SANCTIONS**

Count I of the UCC's complaint alleges that McAlary breached his "fiduciary duties of care, loyalty, and good faith" to Cash Cloud pre-bankruptcy by, among other things, engaging in self-dealing transactions, approving frivolous expenditures, causing Cash Cloud to purchase unnecessary electronic cash machines, approving a "premature" software roll-out, and implementing "inadequate policies and procedures concerning cash management and handling" that led to theft of Cash Cloud funds. *See Official Committee of Unsecured Creditors of Cash Cloud, Inc. v. Christopher McAlary*, No. 23-01125-mkn (Bankr. D. Nev. Sept. 1, 2023), ECF No. 1 at 18-19. Count I also alleges that post-bankruptcy, McAlary breached his fiduciary duties as an officer or director of the debtor-in-possession by, among other things, directing Cash Cloud to send company property to its subsidiary in Brazil and to direct the subsidiary to withhold receivables owed to Cash Cloud. *Id.* at 19.

McAlary argues that the UCC violated Rule 9011(b) by filing and continuing to pursue Count I. The UCC responds that McAlary's motion is procedurally barred, that McAlary waived the arguments presented in his motion, and that the motion fails on the merits.

---

[1] McAlary moves to exceed the page limit for his reply brief in support of his motion. ECF No. 47. The motion is unopposed. I find good cause to exceed the page limit given the issues presented, so I grant the motion. *See* Local Rule 7-3(c).

2

### A.  *Legal Standard*

As with Federal Rule of Civil Procedure 11, Federal Rule of Bankruptcy Procedure 9011 enables courts to sanction court filings that are legally or factually frivolous or made for an improper purpose. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 892 F.2d 802, 808 (9th Cir. 1989), *aff'd*, 498 U.S. 533 (1991); *see also In re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir. 1991) (noting that Rule 9011 and Rule 11 are "virtually identical" and that courts considering sanctions under Rule 9011 should "rely on Rule 11 cases").  Under Rule 9011, an attorney may present a document to the court, "whether by signing, filing, submitting, or later advocating it," only after certifying that, to the best of their knowledge and after a reasonable inquiry:

> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
>
> (3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).  If I find that a filing was frivolous or for an improper purpose, I have the discretion to award sanctions. *In re Grantham Bros.*, 922 F.2d at 1441.  In determining whether to impose Rule 9011 sanctions, I "resolve all doubts in favor of the signer of the filing." *Shams v. CVS Health Corp.*, No. CV 18-8158-DMG (SKx), 2019 WL 1959576, at *7 (C.D. Cal. May 2, 2019) (simplified).

B.  *Safe Harbor Procedural Bar*

The UCC argues that McAlary's motion is procedurally barred under Rule 9011(c) because McAlary did not serve an identical version of his sanctions motion on the UCC prior to filing the motion with the court. McAlary responds that the served motion and the filed motion need not be identical under Rule 9011(c).

A court can sanction a party or its counsel under Rule 9011 after giving "notice and a reasonable opportunity to respond." Fed. R. Bankr. P. 9011(c)(1). Rule 9011's safe harbor provision requires a party who seeks sanctions to first serve a motion on the allegedly offending party, who may then decide to withdraw the challenged filing. Thus, a "motion for sanctions must be made separately from any other motion or request, describe the specific conduct alleged to violate [Rule 9011(b)], and be served under Rule 7004." Fed. R. Bankr. P. 9011(c)(2)(A).[2] The motion for sanctions "must not be filed or presented to the court if the challenged document . . . is withdrawn or appropriately corrected within 21 days after the motion was served." Fed. R. Bankr. P. 9011(c)(2)(B).

The Ninth Circuit has not indicated whether a Rule 9011 motion served under the safe harbor must be identical to the motion subsequently filed with the court. Nor has it addressed the analogous issue under Federal Rule of Civil Procedure 11. Some courts require that the filed motion be identical to the served motion. *See Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 389 (5th Cir. 2022) (holding that the "Rule 11 safe harbor provision requires identicality," and finding that a served motion and filed motion were "not identical" because they contained "substantial differences"); *In re Quinones*, 543 B.R. 638, 646 (Bankr. N.D. Cal. 2015)

---

[2] The amended version of Rule 9011(c) became effective on December 1, 2024. The Advisory Committee Notes for the 2024 Amendment state that the amendment was "intended to be stylistic only."

4

("[T]he motion served must be the same motion as that filed or presented to the Court" under Rule 9011.). But others require only that the filed motion be substantially similar to the served motion. *See Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 808 (7th Cir. 2003) (requiring substantial compliance with Rule 11 safe harbor provision); *Richter v. Oracle Am., Inc.*, No. 22-cv-04795-BLF, 2023 WL 8586690, at *6 (N.D. Cal. Dec. 8, 2023) (noting that the Ninth Circuit "has never imposed a requirement that a served Rule 11 motion be identical to the filed motion," and citing cases finding that "a served motion that rests on substantially the same grounds as a filed motion complies with Rule 11's safe harbor provision"); *In re Murray*, No. 11-10535, 2013 WL 2477162, at *3 (Bankr. N.D. Cal. June 10, 2013) (holding that the motion served under Rule 9011 need not be "filing-ready").

Rule 9011's text and purpose yield two principles. First, as the text of Rule 9011(c)(2)(A) indicates, the moving party must serve a "motion." The seriousness of a motion for sanctions requires "service of a motion," and Rule 9011 does not "permit an informal warning to substitute for service of a motion." *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998). Second, the purpose of the safe harbor provision is to provide notice to the party who may be sanctioned and give that party an opportunity to withdraw the offending filing to avoid sanctions. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment (noting that the safe harbor provision is intended to give the non-moving party the opportunity to "withdraw" its position or "acknowledge candidly that it does not currently have evidence to support a specified allegation"). Because immaterial changes do not undermine notice and an opportunity to take corrective action, a served motion must be substantially similar to the filed motion but need not be a carbon copy. *See In re Murray*, No. 11-10535, 2013 WL 2477162, at *3 (noting that "the court could limit the sanctionable conduct and the relief granted to the draft motion"); *Edgerly v.*

*City & Cnty. of San Francisco*, No. C 03-02169 WHA, 2005 WL 235710, at *3 (N.D. Cal. Feb. 1, 2005) (granting sanctions motion, where served motion differed from filed motion but non-moving party "was not surprised with any new arguments"). Based on these principles, I am not persuaded that a Rule 9011 motion fails if the filed motion is not identical to the motion served.

The motion McAlary served contains all the arguments upon which McAlary seeks sanctions and has the same organization as the filed motion. *See* ECF No. 41-1 (copy of served motion). Based on McAlary's redline version of his motion,[3] the differences between the served and filed motions involve minor stylistic revisions and citation tweaks. *See* ECF No. 48-1 at 7-51. The UCC asserts that McAlary made "substantial revisions" but cites none. *See* ECF No. 29 at 11-12. So the motion the UCC received was substantially similar to the motion that McAlary filed. McAlary's sanction motion is thus not procedurally barred under Rule 9011(c)(2)(A).

### C. *Timeliness and Waiver*

The UCC argues that McAlary waived his right to file his motion for sanctions because McAlary did not appeal the Bankruptcy Court's finding that the claims in the UCC's complaint were colorable, never filed a motion to dismiss, and instead filed a responsive answer to the UCC's complaint. The UCC also argues that McAlary's motion for sanctions is untimely because McAlary filed the motion 14 months after the UCC filed its complaint. McAlary replies that the UCC has waived these arguments because it continues to pursue Count I without a legal or factual basis. He also claims that the motion was timely because the parties were engaged in

---

[3] McAlary provided a redline version comparing the served and filed motions. *See* ECF No. 48-1 at 7-51. The UCC initially provided a redline of its own motion for sanctions, apparently in error. *See* ECF No. 29-1. The UCC then filed a document that appears to be the motion that McAlary served on the UCC, but without redlines. *See* ECF No. 41-1.

settlement negotiations after the UCC filed the complaint and McAlary initially served the Rule 11 notice only a year after the complaint was filed.

"A waiver is an intentional relinquishment or abandonment of a known right or privilege. . . . As minimum requirements to constitute an 'implied waiver' of substantial rights, the conduct relied upon must be clear, decisive and unequivocal of a purpose to waive the legal rights involved. Otherwise, there is no waiver." *Groves v. Prickett*, 420 F.2d 1119, 1125-26 (9th Cir. 1970). Though the parties refer to waiver in their briefing, Rule 9011 and the caselaw (including that cited by the parties) ask whether a sanctions motion is timely, not whether it was waived.

A Rule 9011 motion is filed too early if it is filed before the safe harbor period ends under Rule 9011(c). And a Rule 9011 motion is served (and thus filed) too late if it is served only "after the district court has decided the merits of the underlying dispute giving rise to the questionable filing." *Islamic Shura Council of S. Cal. v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014). But for any Rule 9011 motion falling between these bookends, I consider on a "case-by-case basis" when it "should be served and when, if filed, it should be decided." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. "Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." *Id.*; *see also Holgate v. Baldwin*, 425 F.3d 671, 674, 679 (9th Cir. 2005) (holding that a sanctions motion was untimely because it was served 10 months after the complaint was filed, leaving the complaint filer no opportunity "to correct the offending paper or to counsel the [client] to withdraw it").

Whether a Rule 9011 motion is timely depends on whether it serves Rule 9011's purpose. Rule 9011 is designed to deter litigants and their attorneys from making frivolous or improper

filings, and a "proper sanction assessed at the time of a transgression" is most likely to have a "deterrent effect." *Matter of Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986). In some cases where "liability under proper sanctioning authority will not be immediately apparent or may not be precisely and accurately discernible until a later time," the decision on a Rule 9011 motion may need to wait until after discovery is concluded or trial is completed. *Id.*

> On the other hand, in situations where a complaint or other paper is obviously and recognizably frivolous when filed, or as circumstances lead the court to strongly suspect that a filed paper may not be well-grounded in fact or law, the court should *at a minimum* provide notice to the certifying attorney that Rule 11 sanctions will be assessed at the end of trial if appropriate. Such early notice in cases of this nature will serve to warn the attorney that he risks incurring substantial sanctions, which will in turn increase the likelihood that meritless claims and motions will be abandoned and additional monetary and judicial resources will be saved.

*Id.* at 1183-84 (emphasis in original). Though the Ninth Circuit was referring to the court's obligation to raise a Rule 11 violation, the requirement to provide "early notice" to an attorney who certifies a recognizably frivolous filing is equally applicable to litigants seeking sanctions.[4]

McAlary seeks sanctions on four distinct bases. First, he argues that the complaint itself is legally baseless in violation of Rule 9011(b)(2). *See* ECF No. 19 at 42. This argument is untimely. McAlary argues for sanctions based on Nevada caselaw on breach of fiduciary duty and the *in pari delecto* doctrine, but those arguments could have been raised shortly after the UCC filed the adversary complaint in September 2023. Though McAlary told the UCC that he disagreed with the UCC's interpretation of Nevada law before the UCC filed its complaint,

---

[4] *See, e.g.*, *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1992) (requiring a Rule 11 motion to be brought "as soon as practicable after discovery of a Rule 11 violation"); *Donaldson v. Clark*, 819 F.2d 1551, 1560 (11th Cir. 1987) (noting that failure to give prompt notice "may result in a corresponding reduction in the amount of any costs and attorneys' fees awarded"); *In re Quinones*, 543 B.R. at 648 ("[C]ourts have required that motions under Rule 11 be brought promptly after the identification of the allegedly wrongful conduct.").

8

McAlary did not indicate that he considered such legal arguments sanctionable. *See* ECF No. 20-1 at 19-22.  So providing Rule 9011 notice more than a year later based on these legal arguments is not "early notice."  The presence of ordinary motions practice and discovery does not excuse the failure to provide early notice.  Thus, McAlary's argument that the purely legal contentions of Count I merit sanctions under Rule 9011(b)(2) is untimely.  Because this argument is untimely, I need not decide whether McAlary also waived it.

Second, McAlary claims that sanctions are warranted under Rule 9011(b)(3) because the UCC failed to conduct a reasonable pre-filing investigation of the factual basis for Count I.  He contends a "substantial investigation" would have or did show that the UCC lacked a factual basis for Count I. *See* ECF No. 19 at 11.  But that argument was available to McAlary about a year before he filed his motion for sanctions.[5]  McAlary does not point to any specific evidence he gained during discovery showing that the pre-filing investigation was unreasonable. *Cf. Holgate*, 425 F.3d at 677 (upholding finding that attorney failed to conduct a reasonable pre-filing investigation because the plaintiff's new attorney recommended voluntary dismissal prior to any discovery, suggesting that the plaintiff's old attorney failed to conduct a reasonable investigation before filing the complaint); *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995) (upholding sanctions where "the formulation of the plaintiffs' discovery requests, and the specific dates in those requests, reveal[ed] that [the plaintiff's attorney] did not

---

[5] The UCC's primary source of information about the hours spent in pre-filing investigation is Tali J. Frey's declaration. *See* ECF No. 19 at 12-13.  Frey is an attorney for McAlary at the Carlyon Cica law firm. ECF No. 21-1 at 56.  Frey's analysis of the pre-complaint investigation relies on fee statements that were posted to the Bankruptcy Court ECF docket about a month after the close of the respective billing period, and the last fee statement relevant to the pre-filing period appears to have arrived on November 9, 2023. *See id.* at 56-58; *In re Cash Cloud, Inc.*, No. BK-23-10423-mkn (Bankr. D. Nev. Nov. 28, 2023), ECF No. 1473.  These statements were thus available to McAlary about a year before he filed his motion for sanctions.

9

believe that the complaint against IRH was well-grounded at the time he signed the pleading"). McAlary did not provide "early notice" to the UCC that its pre-filing investigation failed to factually support the complaint. So his argument that the UCC did not conduct a reasonable pre-filing investigation is untimely and not a basis for awarding sanctions under Rule 9011(b)(3). Because this argument is untimely, I need not decide whether McAlary also waived it.

Third, McAlary claims that the UCC pursued Count I for an improper purpose in violation of Rule 9011(b)(1). This argument focuses on Cole Kepro's position as co-chair of the UCC. According to McAlary, Cash Cloud reached a "sweetheart deal" with Kepro even after Kepro fraudulently sold defective digital currency kiosks to Cash Cloud. ECF No. 19 at 35. From these circumstances, McAlary infers that the UCC pursued Count I for several improper purposes, including to protect Kepro (co-chair of the UCC), distract McAlary so he would not introduce new competition to the UCC members, and damage McAlary's reputation. *Id.* at 35-36. But this argument was available to McAlary once the UCC filed its adversary complaint. His argument relies on his own testimony from May 2023 and his October 2024 declaration. *See* ECF Nos. 20-1 at 64-65; 21-1 at 51-52. Yet his testimony occurred prior to the filing of the adversary complaint. And his declaration pertains to pre-complaint events. So McAlary would have been able to provide a declaration supporting his own motion for sanctions shortly after the UCC filed its adversary complaint. Thus, this argument is untimely and I need not decide whether McAlary also waived it.[6]

---

[6] Even if I reached the merits, McAlary does not show that the UCC filed or pursued Count I for an improper purpose. The UCC argues that Kepro reached an agreement with Cash Cloud in an arms-length transaction, as shown by McAlary withdrawing his objection to the transaction and the Bankruptcy Court approving it. *See In re Cash Cloud, Inc.*, No. BK-23-10423-mkn (Bankr. D. Nev. Nov. 28, 2023), ECF No. 1518 at 2 ("Mr. McAlary's Objection to Motion to Approve Settlement Agreement with [Cole Kepro] . . . is hereby withdrawn with prejudice."). Because I must resolve any doubts against the party moving for Rule 9011 sanctions, I would not find

Finally, McAlary argues that the UCC's continued pursuit of Count I is factually frivolous in violation of Rule 9011(b)(3). The UCC does not directly address this argument so it does not contend that the argument is untimely or waived. And this argument pertains to how the evidence stands today after extensive discovery, not how it stood when the UCC filed the complaint. The timing of McAlary's motion would deter the UCC from expending further resources to pursue Count I if there is no factual basis for it. Therefore, this portion of McAlary's motion for sanctions is not untimely, and McAlary did not waive this argument.

In sum, three of McAlary's arguments about Count I—that it was filed for an improper purpose, that it is legally frivolous, and that the UCC failed to conduct a reasonable pre-filing investigation—are untimely. But McAlary's argument that the UCC's continued pursuit of Count I is factually frivolous in violation of Rule 9011(b)(3) is timely and was not waived.

### D. Merits

McAlary argues that the UCC continues to pursue Count I even though the UCC lacks any factual basis for it despite hundreds of hours of investigation pre-complaint and post-complaint. He claims that discovery shows that the allegations supporting Count I either are false, fail to rebut the business judgment rule, or fail to show intentional wrongdoing. McAlary concludes that sanctions are warranted against the UCC and its counsel under Federal Rule of Bankruptcy Procedure 9011(b)(3).

The UCC responds that "[t]he Complaint more than adequately alleges that McAlary repeatedly breached his fiduciary duties of care, loyalty, and good faith." ECF No. 29 at 9. The UCC rejects McAlary's interpretation of Nevada caselaw on corporate fiduciary duty.

---

based on the evidence before me that the UCC's pursuit of Count I was for an improper purpose in violation of Rule 9011(b)(1).

Additionally, the UCC claims that Count I alleges breaches of fiduciary duty after the petition date that are not subject to the restrictions of Nevada Revised Statutes § 78.138(7)(b)(2).

As noted above, McAlary's argument that the complaint's legal contentions violate Rule 9011(b)(2) is untimely. And I do not find the UCC's post-filing elaboration of those legal arguments to be clearly unwarranted by Nevada law in violation of Rule 9011(b)(2).[7]

But the UCC does not respond to McAlary's argument that the evidence for Count I is so one-sided that continuing to maintain it is sanctionable under Rule 9011(b)(3). The UCC's briefing cites extensively to the complaint, but cites virtually no discovery materials that might rebut McAlary's factual contentions. The UCC does not argue that key supportive evidence is forthcoming in discovery. And according to McAlary's calculation, which the UCC does not dispute, over 1400 hours of "investigative time" have already been billed regarding this adversary proceeding. *See* ECF No. 19 at 13. So whether the UCC misunderstood McAlary's motion or, as McAlary argues, truly has no factual basis for maintaining Count I, the UCC's lack of responsiveness is troubling.

Despite this concern, I am also cognizant that a Rule 9011 motion is not meant to "test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. "The time when sanctions are to be imposed rests in the discretion of the trial judge." Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment; *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 n.19 (1991) (citing this text with approval). And I must consider on a "case-by-case basis" when a Rule 9011 motion "should be decided." Fed. R. Civ. P. 11 advisory committee's note to

---

[7] I do not decide here whether the UCC's legal contentions with respect to Nevada's corporate fiduciary duty law are correct.

1993 amendment; *see also Debeikes v. Hawaiian Airlines, Inc.*, No. CV 13-00504 ACK-RLP, 2015 WL 13357960, at *1 (D. Haw. Oct. 13, 2015) (denying without prejudice Rule 11 motion that turned on whether the complaint was "legally or factually baseless from an objective perspective" to await adjudication of the defendant's motion to dismiss). Though sanctions motions best serve their deterrent function when decided early on, I may award sanctions only after I am satisfied that this is one of those "rare and exceptional case[s] where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *See Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

Here, McAlary brought his motion while discovery is still open. *See Official Committee of Unsecured Creditors of Cash Cloud, Inc. v. Christopher McAlary*, No. 23-01125-mkn (Bankr. D. Nev. Nov. 22, 2024), ECF No. 85 at 2 (order moving close of discovery from January 30, 2025 to September 18, 2025). Additionally, the UCC suggests that at least some of its breach of fiduciary duty claims do not rely on the Nevada caselaw that McAlary discusses. And the UCC has not filed a brief discussing the evidence for Count I. Neither party has discussed how the rest of the claims at issue in this case relate to Count I. Because McAlary's challenges to the complaint's sufficiency are untimely, no dispositive motions have been filed, and discovery is still open, McAlary's request for sanctions is premature. But I would consider a renewed motion for sanctions either after the close of discovery or alongside a motion for summary judgment even before the close of discovery.

For these reasons, I deny McAlary's motion without prejudice.

## II.     MCALARY'S MOTION TO STRIKE

In his motion to strike, McAlary argues that I should strike the UCC's motion for sanctions because the UCC did not comply with Rule 9011(c)'s safe harbor provision. The UCC does not dispute that it did not satisfy the safe harbor requirement. Instead, it argues that under

Ninth Circuit precedent, a cross-motion for sanctions does not need to comply with Rule 9011(c)'s safe harbor requirement.

As discussed above, a motion for sanctions must generally comply with Rule 9011(c)'s safe harbor requirements. But the court may award reasonable expenses and attorney's fees to the prevailing party on a Rule 9011 motion "[i]f warranted" even without that party filing a separate Rule 9011 motion, and even if the original Rule 9011 motion was not sanctionable under Rule 9011. *See* Rule 9011(c)(2)(C). More broadly, the Ninth Circuit does not require a "party defending a Rule 11 motion" to "comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001). So a cross-motion for sanctions based on the frivolousness or improper purpose of another Rule 9011 sanctions motion need not satisfy Rule 9011(c)'s safe harbor requirements.[8]

---

[8] According to McAlary's interpretation of *Patelco*, a request for Rule 9011 sanctions as part of an opposition to a motion for sanctions does not need to satisfy the safe harbor requirement, but a separate cross-motion for Rule 9011 sanctions does. But the request in *Patelco* was not merely a request for fees and expenses that were "warranted" under Rule 11's textual parallel to Rule 9011(c)(2)(C). Rather, the request sought sanctions under Rule 11's textual parallel to Rule 9011(b) and alleged that the opposing party's filing was sanctionable as "frivolous." *See Patelco*, 262 F.3d at 903, 913. In *Patelco*, the Ninth Circuit held that such counter-requests for "sanctions" do not need to satisfy the safe harbor requirement. *Id.* at 913; *see also See Eon-Net LP v. Flagstar Bancorp*, 249 F. App'x 189, 197 (Fed. Cir. 2007), *aff'd sub nom. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) (noting that under the Ninth Circuit's ruling in *Patelco*, "a party defending a Rule 11 motion need not comply with Rule 11's safe harbor provisions in filing a cross-motion for sanctions based on the frivolousness of the original motion for sanctions"); *Amaro v. Bee Sweet Citrus, Inc.*, No. 1:21-cv-00382-JLT-HBK, 2022 WL 3908309, at *6 (E.D. Cal. Aug. 30, 2022) ("[D]istrict courts still rely on the *Patelco* decision and exempt defending parties from filing a separate motion or from complying with the safe harbor requirement.").

Because the UCC's Rule 9011 motion is a request for sanctions based on McAlary's own sanctions motion, the UCC did not need to satisfy the safe harbor requirements. So I deny McAlary's motion to strike the UCC's motion for sanctions.

### III. UCC'S MOTION FOR SANCTIONS

The UCC argues that McAlary's motion for sanctions is "plainly frivolous" and has the "sole aim of harassing the Committee and needlessly increasing its costs." ECF No. 30 at 25. The UCC claims that sanctions are appropriate because McAlary's motion is procedurally defective, contains only arguments that he has waived, is without merit, is an improper proxy for a motion to dismiss, is a collateral attack on the Bankruptcy Court's order granting the UCC derivative standing, and baselessly attacks the UCC's integrity.

As discussed above, McAlary's motion is not procedurally defective. Though some arguments in McAlary's motion are untimely, the UCC's motion does not address McAlary's contention that the UCC continues to maintain Count I without a factual basis. That contention is independent of any motion to dismiss or the Bankruptcy Court's order conferring derivative standing. And though I do not sanction the UCC for maintaining claims for an improper purpose, I do not find that McAlary's motion was frivolous or harassing based on the briefing before me. For these reasons, I deny the UCC's motion for sanctions.

### IV. CONCLUSION

I THEREFORE ORDER that:

- Christopher McAlary's motion to strike the plaintiff's cross-motion for sanctions **(ECF No. 44) is DENIED**.

- Christopher McAlary's motion for leave to exceed the page limit for its reply brief **(ECF No. 47) is GRANTED**.

- Christopher McAlary's motion for sanctions under Federal Rule of Bankruptcy Procedure 9011 **(ECF No. 19) is DENIED without prejudice**.

- The Official Committee of Unsecured Creditors' cross-motion for sanctions **(ECF No. 30) is DENIED**.

DATED this 30th day of April, 2024.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE